# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

RICKY BRANNON,    )
#179051,       )
           ) CIVIL ACTION NO. 9:13-1792-RMG-BM
    Petitioner,  )
           )
v.          ) **REPORT AND RECOMMENDATION**
           )
ROBERT M. STEVENSON,  )
           )
    Respondent. )
_____)

    Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on June 26, 2013.[1]

    The Respondent filed a return and motion for summary judgment on December 6, 2013. As the Petitioner is proceeding pro se, a Roseboro order was filed on December 9, 2013, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. After receiving an extension of time, Petitioner filed a response in opposition on March 19, 2014.

    This matter is now before the Court for disposition.[2]

---

[1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



## Procedural History

Petitioner was indicted in Cherokee County in February 2004 on two counts of burglary in the first degree [Indictment Nos. 04-GS-11-0201 & 0202] and one count of larceny [Indictment No. 04-GS-11-203). (R.pp. 638-642). See also Court Docket No. 21-1, pp. 1-6. Petitioner was represented by J. Roger Poole, Esquire[3], and after a jury trial on April 12-13, 2006, he was found guilty on one count of burglary first degree [Indictment No. 04-GS-11-202] and the grand larceny charge [Indictment No. 04-GS-11-203], and not guilty on the other burglary first degree charge [Indictment No. 04-GS-11-201]. (R.p. 302). Petitioner was sentenced to life imprisonment on the burglary first degree charge, and five (5) years, concurrent, on the grand larceny charge. (R.pp. 314-315).

Petitioner filed a timely appeal in which he was represented by Lanelle C. Durant, Appellate Defender. Counsel raised the following issue:

> Did the trial court err in admitting the testimony of the footprint analysis expert because his testimony was more prejudicial than probative due to the nature of the testimony?

(R.p. 649).

On June 20, 2008, the South Carolina Court of Appeals denied the petition in its entirety. (R.pp. 671-672). Petitioner did not seek rehearing or certiorari review from the Supreme Court of South

---

[3]Another attorney, Don Thompson, was originally Petitioner's counsel in this case and apparently in another case in General Sessions Court in Cherokee County. See Court Docket No. 21-15; see also p. 632. However, Thompson was subsequently relieved as Petitioner's counsel in this case, apparently due to a potential conflict with his employment by the County and certain pending arson charges involving the County Courthouse against the Petitioner. (R.p. 632). Petitioner testified that after he was charged with the burglary first charge in this case, "it was alleged that I had something to do with setting the Cherokee County Courthouse on fire." (R.p. 573). Poole was then appointed counsel for Petitioner.

2



Carolina, and the South Carolina Court of Appeals issued the remittitur on July 8, 2008. (R.p. 673).

On June 10, 2009, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court, raising several issues. <u>Brannon v. State of South Carolina</u>, No. 2009-CP-1100555. (R.pp. 317-325). Petitioner was represented in his APCR by Rodney W. Richey, Esquire, who filed an amended petition raising the following issues:

> The applicant was provided with deficient representation by his attorney, in that the conduct of his attorney was objectively unreasonable under the circumstances. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The outcome of the applicant's proceeding was prejudiced, and it is reasonable probable [sic] that the outcome would have been different had counsel's performance not been deficient. <u>Strickland</u>, 466 U.S. at 694. Defense counsel was ineffective based on one or more of the following:
>
> 1. My defense attorney failed to conscientiously discharge his professional responsibilities while he was handling my case.
>
> 2. My defense attorney failed to effectively challenge the arrest and seizure of Applicant.
>
> 3. My defense attorney failed to act as my diligent, conscientious advocate.
>
> 4. My defense attorney failed to give me his complete loyalty.
>
> 5. My defense attorney did not have my best interest in mind while he was supposed to be investigating and preparing my case.
>
> 6. My defense attorney failed to serve my cause in good faith.
>
> 7. My defense attorney neglected the necessary investigations and the preparation of my case.
>
> 8. My defense attorney did not do the necessary factual investigations on my behalf.
>
> 9. My defense attorney did not do the necessary legal research.
>
> 10. My defense attorney did not conscientiously gather any information to protect my rights.
>
> 11. My defense attorney did not try to have my case settled in a matter that would have been to my best advantage.
>
> 12. My defense attorney did not advise me of all my rights or take any of the actions that were



3

necessary to protect preserve them; knowing I was not versed in the law.

13. My defense attorney, knowing I was illiterate in the law, never properly ascertained whether or not I actually understood or comprehended all of the issues that were involved in my case.

14. My defense attorney never properly consulted with me or kept me informed with what was going on as far as my case was concerned.

15. My defense attorney never explained to me or discussed with me any of the elements of the crime charged.

16. My defense attorney never made any attempt to ascertain whether or not I actually knew what the elements of the crime charge were or whether or not I understood exactly what the term "criminal element" actually meant.

17. My defense attorney never explained to me or discussed with me how the elements of the crime charged and the evidence that the prosecution planned to introduce into evidence against me related to one another and did not discuss how the sentencing would be done especially as it related to the elements of the crime as in State v. Boyd.

18. My defense attorney never informed me of any of the defenses that were available to me.

19. My defense attorney never intended to offer any defense to the court on my behalf.

20. My defense attorney never explained to me or discussed with me any kind of defense strategy.

21. My defense attorney never explained to me or discussed with me any of the tactical choices that they either made or were planning to make.

22. My defense attorney dictated to me exactly how my case was going to be handled and offered no alternative options.

23. My defense attorney failed to properly acquaint [himself] with the law and the facts surrounding my case and as a direct result of [his] intentional negligence, there was a very serious error in [his] assessment of both the law and the facts.

24. Because of my defense attorney's gross neglect and his many legal errors no defense at all was put in issue for me during the Court proceedings.

25. My defense attorney did not subject the prosecution's case to any adversarial testing.



4

26. My defense attorney failed to oppose the prosecution's case with any adversarial litigation.

27. My defense attorney failed to function as the government's adversary in any sense of the word.

28. My defense attorney failed to pursue any of the legal recourse that were available to him.

29. The attorney that represented me on this charge in Court failed to function as the counsel that the Constitution's Sixth Amendment Guarantees.

30. My defense attorney failed to call alibi witnesses on my behalf which would have proven my innocence.

31. My defense attorney failed to appeal my case after I was convicted when I wanted to appeal.

See (R.pp. 518-521).

An evidentiary hearing was held on Petitioner's application on April 6, 2010. (R.pp. 546-620). In an order filed November 15, 2010, the PCR judge denied relief on the APCR in its entirety. (R.pp. 623-637).

Petitioner filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Wanda H. Carter, Deputy Chief of the South Carolina Commission on Indigent Defense, who filed a Johnson[4] petition seeking to be relieved and raising the following issue:

> Trial counsel erred in failing to investigate into and interview the female who was in the car with petitioner at the time of his arrest in order to develop an alibi defense in the case.

See Court Docket No. 21-8, p. 3.

Petitioner filed a pro se brief in response to the Johnson petition on September 12, 2011, in which he raised numerous issues. See Court Docket No. 21-9. On May 16, 2013, the South Carolina

---

[4]Johnson v. State, 364 S.E.2d 201 (S.C. 1998); see also Anders v. California, 386 U.S. 738, 744 (1967).



5

Supreme Court denied Petitioner's writ of certiorari and granted counsel's petition to be relieved. See Court Docket No. 21-10. The Remittitur was sent down on June 4, 2013. See Court Docket No. 21-11.[5]

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

**Ground One:** The prosecution improperly constructively amended the aggravating element of the Petitioner's first degree burglary indictment. In their closing arguments.

**Ground Two:** Ineffective Assistance of Original Trial Counsel who was a conflict of interest and violated the Petitioner's Right to due process.

**Ground Three:** Ineffective Assistance of Appellate Counsel in violation of due process.

---

[5]While Petitioner's APCR appeal was pending, Petitioner filed a second APCR on March 20, 2013. Brannon v. State, C.A. No. 13-CP-11018 (Court Docket No. 21-12). See also Court Docket No. 21-13. A conditional order of dismissal was entered in that case on December 19, 2013, finding that Plaintiff's second APCR was both successive and untimely. See Court Docket No. 35-1. No final order has been provided to this Court as of the filing of this opinion, and neither party has argued that this matter should be stayed. Cf. Rhines v. Weber, 544 U.S. 269, 276-277 (2005); see also DeLeon v. Stevenson, No. 12-2810, 2013 WL 5434143 at * 3 (D.S.C. Sept. 27, 2013). Rather, Petitioner affirmatively states that the matters in his current federal habeas petition have been exhausted, but if the Court finds otherwise, Petitioner requests a remand to state court. See Memorandum In Opposition to Summary Judgment, pp. 10-11. In any event, a review of the state court petition reflects that Petitioner is raising ineffective assistance of PCR counsel claims in that action which do not reflect any meritorious claims which could be independently pursued in his federal habeas action. See Court Docket No. 21-13. See Bryant v. Maryland, 848 F.2d 492, 494 (4th Cir.1988) [claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas relief]; Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995), cert. denied, 518 U.S. 1–22(1996)["An attack on a state habeas proceeding does not entitle the petitioner to habeas relief...."]; Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir.1987) (per curiam) ["Because claim (1) goes to issues unrelated to the cause of [the] petitioner's detention, it does not state a basis for habeas relief."]; Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.1998) [errors in state post-conviction proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief; see also, discussion, Section III (C) [Ground Four Procedural Bar Discussion], infra. Accordingly, there is no basis currently before the court which would provide the necessary grounds to justify a stay of this petition.



6

**Ground Four:** Prejudice Ineffective Assistance of Substitute Trial Counsel, in violation of due process.

**Ground Five:** Failure of state to actually and timely serve a valid notice to seek life without the possibility of parole on the petitioner and trial counsel as mandated by state statute S.C. Code § 17-25-45 and due process of law.

**Ground Six:** That the Petitioner has (2) two newly discovered or after discovered evidence claims that warrant reversal of his conviction and sentence.

**Ground Seven:** Abuse of discretion of the trial court in failing to conduct its "gate keeping" obligation. To proffer the testimony of the expert witness, conduct a 403 analysis. Before allowing the shoe print experts prejudice testimony.

**Ground Eight:** Abuse of discretion of the PCR court, in its failure to grant Petitioner a continuance, and an order compelling discovery of critical documents and a order for the testing of DNA. Evidence. When such discovery was highly critical to the Petitioner to substantiate his PCR, allegations and to fully develope the record on his claims of ineffective assistance of both. original and substitute trial counsels.

**Ground Nine:** The trial court. In its jury charge improperly constructively amended the indictment by giving instructions under the "second degree burglary statute." Absent any required aggravating element. When petitioner was indicted under the First degree burglary statute.

**Ground Ten:** Abuse of discretion of the trial court. For allowing stipulations to an essential element of Petitioner prior burglary convictions, in lieu of informing the jury and without conducting a "403", analysis before permitting the stipulations.

**Ground Eleven:** PCR appellate counsel was prejudice ineffective for raising and arguing a frivolous none meritorious issue. In the Petitioner's appeal of the denial of his "post conviction relief application." When there was several meritorious grounds which could have been raised and argued in the appeal.

See Petition, pp. 1, 3, 9, 13, 24, 27, 33, 35, 37-39.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter



of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Respondent argues in his motion, inter alia, that the entire Petition is subject to dismissal because Petitioner failed to file his application for a writ of habeas corpus in federal court within one (1) year following the exhaustion of his state court remedies. This limitations period is part of the AEDPA,[6] and runs, under 28 U.S.C. § 2244(d)(1), from the latest of -

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Furthermore, § 2244(d)(2) provides that,

    The time during which a properly filed application for State post-conviction or other

---

[6]Antiterrorism and Effective Death Penalty Act of 1996.

8



collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

This Petition falls under § 2244(d)(1)(A).

Although the Respondent argues that the Petition in this case is untimely, Respondent concedes that his untimeliness argument hinges solely on the determination of whether the tolling of time ended when the order was issued denying the <u>Johnson</u> petition in Petitioner's PCR appeal, or whether the tolling of time ended when the Remittitur was subsequently issued in Petitioner's PCR appeal. <u>See</u> Respondent's Brief, p. 29. The State disputes that the limitations period remained tolled until the date that the Remittitur was issued in Petitioner's state PCR action, but admits that the Petition is timely filed if the Court finds that the issuance of the Remittitur in Petitioner's PCR action ends the tolling period.

Because there is currently no controlling authority on this issue, and without making a finding thereon, the undersigned will use the date that the Remittitur was issued out of an abundance of caution and in light of Petitioner's <u>pro se</u> status, and in order to allow for a more thorough analysis of Petitioner's claims. <u>See</u> <u>Gonzalez v. Thaler</u>, 132 S.Ct. 641, 654 n. 10 (2012) [distinguishing between §2244(d)(2) and (d)(1) provisions]; <u>see</u> <u>also</u> SCACR 221(b); <u>Christy v. Christy</u>, 452 S.E.2d 1, 4 (S.C.Ct.App. 1994)[sending of the remittitur ends appellate jurisdiction]; <u>Bradshaw v. McCall</u>, No. 12-3624, 2014 WL 463142 at * 7 n. 3 (D.S.C. Feb. 4, 2014)[same]. Therefore, giving Petitioner the benefit of the doubt and assuming that the statutory time was tolled until the Remittitur was issued in his PCR appeal on June 4, 2013, the undersigned has proceeded to discuss the merits of Petitioner's claims.



## II.

### (Grounds One and Nine)

In Grounds One and Nine of his Petition, Petitioner argues that the prosecuiton and

the trial court improperly constructively amended the first degree burglary indictment in their closing

arguments and in the jury charge, respectively.  Petitioner raised these issues in his PCR proceeding,

and the PCR court found them to be without merit.  (R.pp. 629-630).

In South Carolina,

(A) A person is guilty of burglary in the first degree if the person enters a dwelling
without consent and with intent to commit a crime in the dwelling, and either:

(1) when, in effecting entry or while in the dwelling or in immediate flight, he
or another participant in the crime:

(a) is armed with a deadly weapon or explosive; or

(b) causes physical injury to a person who is not a participant in the
crime; or

(c) uses or threatens the use of a dangerous instrument; or

(d) displays what is or appears to be a knife, pistol, revolver, rifle,
shotgun, machine gun, or other firearm; or

(2) the burglary is committed by a person with a prior record of two or more
convictions for burglary or housebreaking or a combination of both: or

(3) the entering or remaining occurs in the nightmare . . . .

See S.C. Code § 16-11-311.

Petitioner's indictment in the burglary first degree conviction at issue reads as follows:

That Ricky Brannon, did in Cherokee County on or about November 20, 2003
willfully and unlawfully enter the residence belonging to Kenneth Gallman at [2244
Candlewood Lane, Gaffney,] South Carolina, without authority to do so and with the
intent to commit a crime therein and Ricky Brannon has a prior record of two or more

10



convictions for burglary or housebreaking or a combination of both all in violation of [S.C. Code Ann.] § 16-11-311[.]

<u>See</u> (R.p. 639).

Immediately prior to Petitioner's trial, the trial Court confirmed the parties' agreement that:

> **THE COURT:** Let me put on the record we had a[n] in-chambers discussion concerning the definition of burglary first. And, as I understand, this case arises to burglary one because of the Defendant's prior convictions or guilty pleas of two or more burglaries. The State will introduce into evidence, outside the presence of the jury, certified copies of the record to establish that particular element, and I will – when I instruct the jury, will instruct them in such a manner that two prior convictions will not prejudice the Defendant. I will simply state that the other elements have been met and both parties stipulate to that. Is that basically what our agreement was, Mr. Pauling? I keep saying Mr. Pauling. Who is lead counsel?
>
> **MR. PAULING:** I'm – I'm lead counsel.
>
> **THE COURT:** All right. Go ahead.
>
> **MR. PAULING:** Yes, that's correct, Your Honor.
>
> **THE COURT:** Mr. Poole?
>
> **MR. POOLE:** Yes, Sir.

(R.pp. 39-40).

Petitioner's counsel agreed to this stipulation in order to avoid Petitioner being prejudiced in front of the jury based on his prior convictions. Then, at trial and outside the presence of the jury, Petitioner's four prior burglary first degree convictions were introduced and Petitioner's counsel affirmatively stated that he had no exceptions or objections. (R.pp. 251-253). As a result of this stipulation, the State did not have to prove that element to the jury.

With regard to Ground One, Petitioner contends that the prosecution introduced evidence that Petitioner possessed knives and a gun in an attempt to constructively amend the



indictment and prove an element under S.C. Code § 16-11-311 (A)(1) in order to establish one of the

second elements necessary for a burglary first degree conviction. However, since Petitioner's counsel

had already stipulated that he met one of the second elements under S.C. Code § 16-11-311(A)(2),

the State did not need to prove that element and was not attempting to constructively amend the

indictment in order to use that evidence to meet the second element. There was simply no need to

do so. Further, with regard to the evidence regarding the knives and a gun, there was no stipulation

that that evidence would not be introduced. The State had no duty or agreement not to present that

evidence at trial, and the State's reminder in its closing argument to the jury that Petitioner had

moved a gun and butcher knives to a bedroom during the burglary of the Gallman house was not any

type of constructive amendment of the indictment. (R.p. 276).

With regard to Ground Nine, Petitioner contends that when the trial court did not

charge the jury with regard to the second required element of burglary first degree, the trial court was

actually charging the jury with a burglary second degree charge and, in doing so, amended his

indictment. However, in the trial court's charge, after instructing the jury on the element of first

degree burglary, the trial court stated, "[t]here's some other technical matters that the State must

prove, but the lawyers have stipulated that they have met that, so, that is not something that you must

consider [sic] yourself with." (R.p. 296). Without citing any supporting legal authority, Petitioner

seems to argue that a criminal defendant can not stipulate to the second element. However, there is

no supporting authority for this proposition. Rather, counsel's stipulation at trial that the second

element had been met alleviated the need for that element to be charged to the jury.

Finally, "[v]ariances and other deficiencies in state court indictments are not ordinarily

a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as



12

to amount to a deprivation of the defendant's rights to due process." <u>Ashford v. Edwards</u>, 780 F.2d

405, 407 (1985). Based on the foregoing discussion and analysis hereinabove, <u>supra</u>, even assuming

arguendo that the State and trial court did constructively amend the indictment (which the

undersigned does not find), such deficiency did not render Petitioner's trial "so egregiously unfair as

to amount to a deprivation of the defendant's right to due process." <u>See</u> <u>Ashford</u>, 780 F.2d at 407.

Counsel had already stipulated to the required element of the charged offense under § 16-11-

311(A)(2), and rather than showing prejudice from such action, Petitioner could have been prejudiced

by the jury learning that he had previously pled guilty to four first degree burglary charges. (R.pp.

251-253). In fact, Petitioner was found not guilty on one of the first degree burglary charges brought

by the State at his trial. Petitioner has not presented any arguments to contest his four prior burglary

convictions or to show why they would not have been admitted if the stipulation at issue had not been

made. Therefore, even if a constructive amendment occurred with respect to the State's closing or

the Court's instructions, Petitioner has not shown any prejudice, nor has he presented evidence to

prove these claims. <u>Smith v. North Carolina</u>, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the

burden of proving his allegations when seeking a writ of habeas corpus].

These claims are without merit and should be dismissed.

## III.

### (Grounds Two, Three and Four)

Petitioner raises several ineffective assistance of counsel claims. Specifically, in

Ground Two of his Petition, Petitioner contends that his original trial counsel was ineffective because

of a conflict of interest and that he violated Petitioner's right to due process. In Ground Three,

Petitioner contends that his appellate counsel was ineffective in violation of his due process rights.



13

Petitioner then claims in Ground Four that his substitute trial counsel was ineffective on the basis of seventeen separate issues. In Ground Eleven, Petitioner contends that his PCR appellate counsel was ineffective for failing to raise and argue certain issues while instead raising a frivolous non-meritorious issue.

With regard to Petitioner's multiple ineffective of assistance of counsel Grounds (except for certain issues in Ground Four,[7] and Ground Eleven[8]), these issues were raised in Petitioner's APCR, where Petitioner had the burden of proving the allegations in his petition, as well as on appeal to the State Supreme Court. <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert. denied</u>, 474 U.S. 1094 (1986); <u>see also</u> Court Docket Nos. 21-3; 21-5, pp. 20-23, 48-620. The PCR court rejected these and other claims,[9] making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. <u>See Brannon v. State of South Carolina</u>, No. 09-CP-11-0555.

Specifically, the PCR judge found that: 1) Petitioner alleged that the prosecution constructively amend the aggravating element of the crime charged in the indictment during closing arguments and that the trial court similarly amended the indictment during jury instructions; 2) Petitioner failed to present any evidence or testimony in support of his allegations; 3) the record directly refuted Petitioner's allegations; therefore, that claim was denied and dismissed; 4) Petitioner

---

[7]The Respondent correctly points out that issues 3-4, and 6-16 contained within Ground Four are procedurally barred. <u>See</u> discussion, <u>infra</u>.

[8]Since Ground Eleven involves appellate PCR counsel, it is dealt with separately in a different section. <u>See</u> discussion, <u>infra</u>.

[9]Rather than separate out the PCR Court's findings with respect to other claims made by the Petitioner, the undersigned has listed *all* of the PCR court's findings relevant to Petitioner's claims, some of which are discussed in separate sections, <u>infra</u>, of this opinion.



also alleged that there was a fatal variance between the indictment and crime he faced and the proof at trial; 5) that not only did the Petitioner fail to provide any evidence or testimony in support of this allegation, but also the record reflects that a jury found the Petitioner guilty and his conviction was affirmed on appeal; 6) therefore, Petitioner failed to meet his burden of proof as to this claim and it was denied and dismissed; 7) Petitioner alleged that the trial court abused its discretion when it allowed the parties to stipulate to an essential element instead of informing the jury; 8) Petitioner also alleged that the trial court abused its discretion when it allowed the testimony of an expert in shoe prints; 9) Petitioner failed to meet his burden of proof as to both of these claims; 10) other than Petitioner's allegations in his application, Petitioner failed to provide any evidence or testimony to support his claims; 11) additionally, the record clearly reflected and supports the trial court's communication with the parties, pre-trial hearing and decision regarding both the stipulation to the aggravating element and the testimony of the expert regarding Petitioner's shoe prints; 12) furthermore, both issues were raised, ruled upon by the trial court, and the issue of the shoe print expert's testimony was reviewed and ruled upon by the South Carolina Court of Appeals; 13) therefore, that claim was dismissed and denied; 14) Petitioner also alleged that the prosecution failed to provide timely notice of the intent to seek life without parole; 15) Petitioner's testimony lacked credibility on this issue, in particular, when the record and counsel's testimony directly refuted Petitioner's testimony; 16) the notice of intent to seek life without parole was timely served and Petitioner failed to meet his burden of proof as to this claim; 17) therefore, this allegation was dismissed and denied; 18) Petitioner also made numerous other vague and repetitive claims regarding conflicts of interest, jury instructions, and prior convictions; 19) however, Petitioner failed to provide any testimony, other than testimony regarding his claims of counsel's alleged conflict of interest, to



15

support any of these claims; 20) Petitioner failed to meet his burden of proof as to these claims and

they were denied and dismissed; 21) Petitioner also alleges that he received ineffective assistance of

original and substitute counsel; 22) as to the allegations of ineffective assistance of substitute counsel,

counsel's testimony was more credible than Petitioner's testimony; 23) counsel was believable,

knowledgeable, and well prepared; 24) counsel thoroughly investigated the case, researched legal

issues, and prepared legal arguments in support of the defense theory; 25) counsel made the

appropriate motions and argued against the introduction of the evidence from the traffic stop and

attempted to attack the credibility and qualifications of State witnesses, but unfortunately, the judge

disagreed with counsel's efforts; 26) counsel communicated with the Petitioner and attempted to

negotiate with the State on Petitioner's behalf; 27) regarding Petitioner's claims that his original

appointed trial counsel was ineffective, Petitioner failed to present any testimony or evidence in

support of his allegation that his original trial counsel was ineffective; 28) therefore, this claim was

denied and dismissed; 29) in regards to Petitioner's claim that testimony from "Tasha" regarding the

traffic stop or Petitioner purchasing the stolen guns would have helped his case, Petitioner failed to

meet his burden of proof; 30) prejudice from trial counsel's failure to interview or call witnesses

cannot be shown where the witnesses do not testify at post-conviction relief; 31) Petitioner's mere

speculation as to what a witness' testimony would have been cannot, by itself, satisfy the burden of

showing prejudice; 32) a Petitioner must produce the testimony of a favorable witness or otherwise

offer testimony in accordance with the rules of evidence at the PCR hearing in order to establish

prejudice from a witness' failure to testify at trial; 33) Petitioner produced no testimony or evidence

to support his allegations; 34) Petitioner offered nothing more than his assertions that "Tasha" could

have assisted in his defense; 35) therefore, this claim was without merit and was denied and



16

dismissed; 36) Petitioner also alleged that counsel was ineffective for failing to investigate the case sufficiently, in particular the traffic stop; 37) however, Petitioner offered no testimony or evidence as to what he believed counsel would have discovered had he conducted additional investigations; 38) failure to conduct an independent investigation does not constitute ineffective assistance of counsel when only supported by speculation as to result; 39) counsel was well prepared to argue against the traffic stop and evidence obtained as a result; 40) Petitioner failed to meet his burden of proof as to this claim; 41) therefore, this issue was denied and dismissed; 42) Petitioner also alleged that counsel had a conflict of interest because of counsel's employment with the Seventh Judicial Circuit and Petitioner's pending charges of attempted arson; 43) the mere possibility of a conflict is insufficient to challenge a criminal conviction; 44) in order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance; 45) Petitioner must show that his attorney actually owed duties to a party whose interests were adverse to the Petitioner; 46) although counsel practiced law in the Seventh Judicial Circuit, his office and work was centered in Spartanburg County, while the pending arson charges Petitioner faced originated in Cherokee County; 47) it is clear from the record that counsel was a zealous advocate for the Petitioner, so Petitioner failed to meet his burden of proof as to this claim; 48) therefore, this issue was without merit and was dismissed; 49) regarding Petitioner's allegation that counsel was ineffective for failing to object to the defective indictment, the Petitioner failed to meet his burden of proof; 50) Petitioner presented no evidence or testimony in support of his claims that counsel was ineffective for failing to object to the allegedly defective indictment and, in fact, the record demonstrated that there was no legal basis for an objection to the indictment; therefore, this claim was denied and dismissed; 51) regarding



Petitioner's claim that counsel failed to properly question Henson and Folkes, there was no merit to this claim; 52) not only did the Petitioner provide no examples of questions that counsel should have asked either witness, but the record clearly reflected that counsel cross-examined each witness during the trial; 53) therefore, this issue was denied and dismissed; 54) Petitioner also alleged that counsel was ineffective for failing to appear to represent Petitioner at his magistrate trial for the traffic charges related to the incident; 55) Petitioner's testimony lacked credibility as to this issue and the PCR Court found counsel's testimony to be far more credible; 56) counsel was not representing Petitioner on the traffic charges and was therefore not required to appear on Petitioner's behalf; 57) therefore, this claim was denied and dismissed; 58) Petitioner failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of Petitioner; 59) Petitioner failed to prove that he was prejudiced by trial counsel's performance; 60) Petitioner did not meet his burden of proving that counsel failed to render reasonably effective assistance; 61) therefore, that allegation was denied; 62) regarding Petitioner's allegation that appellate counsel was ineffective because of "frivolous appeal, prejudice late notice of final decision of issue on appeal," the PCR court found that the Petitioner failed to meet his burden of proof; 63) Petitioner failed to present any evidence or testimony to support his claims or prove prejudice; therefore, this allegation was denied and dismissed; 64) regarding Petitioner's allegation that his due process rights were violated because of "conflict of interest in the 7th Circuit Solicitor's Office in violation of order of disqualification, obstruction of justice, due process violation, denial of right to trial and appeal," Petitioner failed to meet his burden of proof; 65) Petitioner's allegations were vague and repetitive and he offered no support in the form of testimony or evidence for any of the alleged claims; 66) in fact, the record directly refuted Petitioner's claim that he was denied his right to trial and appeal; 67)



18

clearly, Petitioner received a full trial and subsequent appeal regarding these charges; 68) therefore, that claim was denied and dismissed; 69) as to Petitioner's allegation that newly discovered evidence existed in the form of perjury testimony, 6th amendment violation, discovery violation, 4th amendment violation and violation of due process (involuntary statement), Petitioner failed to meet his burden of proof; 70) Petitioner failed to produce any evidence that met *any* of the requirements for after-discovered evidence; 71) therefore, Petitioner failed to meet his burden of proof in regards to this allegation and that claim was dismissed; 72) the Petitioner did not establish any constitutional violations or deprivations; and 73) Petitioner's application for post conviction relief was denied and dismissed with prejudice. (R.pp. 628-636).

Substantial deference is to be given to the state court's findings of fact. <u>Evans v. Smith</u>, 220 F.3d 306, 311-312 (4th Cir. 2000), <u>cert. denied</u>, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], <u>cert. denied</u>, 532 U.S. 925 (2001); <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir. 2000)(en banc), <u>cert. denied</u>, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). <u>See also</u> <u>Fisher v. Lee</u>, 215 F.3d 438, 446 (4th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1095 (2001); <u>Frye v. Lee</u>, 235 F.3d 897, 900 (4th Cir. 2000), <u>cert. denied</u>, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion.



19

<u>Strickland</u>, 466 U.S. at 698; <u>Pruett v. Thompson</u>, 996 F.2d. 1560, 1568 (4th Cir. 1993), <u>cert.</u> <u>denied</u>, 114 S.Ct. 487 (1993) (citing <u>Clozza v. Murray</u>, 913 F.2d. 1092, 1100 (4th Cir. 1990), <u>cert.</u> <u>denied</u>, 499 U.S. 913 (1991)). Nevertheless, with regard to Petitioner's ineffective assistance of counsel claims which were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>, 120 S.Ct. 1495 (2000). <u>See</u> <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see</u> <u>also</u> <u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims which were adjudicated on their merits.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 694. In <u>Strickland</u>, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was




deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996).

For the reasons set forth and discussed hereinbelow, Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

### A.
### (Ground Two)
### Ineffective Assistance of Original Counsel

With regard to Ground Two, Petitioner argues that his original counsel (Thompson) was ineffective for failing to conduct an investigation into Petitioner's traffic stop and arrest, which led to a warrantless search of evidence and Petitioner eventually being charged. Petitioner contends that if Thompson had been successful in county magistrate court (where Petitioner faced traffic charges based on the stop), he could have shown that the traffic stop was pretextual and the evidence obtained as a result of this traffic stop would have been thrown out in Petitioner's trial on the charges at issue in this habeas petition. See Petitioner's Memorandum in Opposition to Summary Judgment, pp. 14-15. Petitioner also contends that Thompson withheld from Petitioner the State's plea offer and thus rejected the plea negotiations on his own without consulting the Petitioner. Petitioner contends that he did not learn of this offer until October 2004, in a different proceeding wherein counsel and the solicitor's office were dismissed/disqualified due to a conflict of interest. See Petitioner's Memorandum in Opposition to Summary Judgment, p. 19; see also discussion (footnote 3), supra. These claims are without merit.

First, there is no evidence in the record to support that Thompson was ever appointed



to represent Petitioner in county magistrate court. Rather, the record indicates that Petitioner was represented on his traffic charges by Wade S. Weatherford, III, Esquire. See Court Docket No. 21-9, pp. 132-133. Accordingly, Petitioner has failed to show that Thompson was his counsel in that case and has therefore made no showing that Thompson provided him ineffective assistance of counsel in a case where he was not even Petitioner's counsel.

Second, while Petitioner alleges that Thompson withheld a plea offer in his case, he has presented no evidence of an offer being made and withheld from him in this case. The record reflects that in a hearing where Petitioner had moved to have Thompson disqualified in another case [Indictment Nos. 04-GS-11-216 & 04-GS-11-217][10], the Solicitor referenced that he had offered to have negotiations regarding that case and other cases regarding Petitioner, including referencing the life case. See Court Docket No. 21-15, p. 15. However, no specific plea offer was discussed with respect to that case or any other case, nor was it clear there was even an offer made with regard to the case at issue at that hearing (which was not why the parties were before the Court at that time). Id. Accordingly, Petitioner has not shown that there was ever an offer made or even that any negotiations had taken place.

Finally, Poole testified that he replaced Thompson as Petitioner's counsel in December 2005, before Petitioner's trial in April 2006. (R.p. 611). Petitioner did not call Thompson as a

---

[10]In addition to Petitioner moving to have Thompson relieved in the present case on the basis of a conflict of interest [see discussion, supra], Petitioner had additional pending state law charges on Indictment Nos. 04-GS-11-216 & 04-GS-11-217 where Thompson was representing him. See Court Docket No. 21-15. Petitioner also moved in that proceeding to have Thompson removed, albeit on different grounds. Id. Petitioner testified that he moved to have Thompson relieved because Thompson was an employee of Cherokee County and Petitioner had pending arson charges related to the Cherokee County Courthouse. (R.p. 574). Those arson charges are in addition to the charges in Indictment Nos. 04-GS-11-216 & 04-GS-11-217. See Court Docket No. 21-15, pp. 5-7.

witness at his PCR hearing, so there is very little factual information regarding Thompson in the record, none of which shows ineffective assistance of counsel. The PCR court found that Petitioner failed to present any evidence or testimony in support of his allegation that Thompson was ineffective. (R.p. 632). Accordingly, Petitioner has failed to meet his burden of showing that Thompson was ineffective under this standard. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Therefore, Ground Two should be dismissed.

**B.**
**(Ground Three)**
**Ineffective Assistance of Appellate Counsel**

In Ground Three, Petitioner contends that his appellate counsel (Durant) was ineffective because she failed to raise any appealable issues and because she delayed in informing Petitioner that his conviction had been affirmed on direct appeal. Petitioner raised these issues in his APCR, but at his PCR hearing Petitioner failed to call Durant as a witness and he did not testify regarding Durant's representation during his own testimony.[11] (R.pp. 565-602). The PCR court found that Petitioner failed to present any evidence or testimony to support his claims or to prove prejudice, and that this claim should be dismissed. (R.p. 635). No basis for a reversal of the state court has been shown.

Appellate counsel may make a reasonable strategic choice not to appeal every non-frivolous argument requested by a defendant; Jones v. Barnes, 463 U.S. 745, 751-754 (1983); and

---

[11]Petitioner seems to contend that the State should have subpoenaed Durant. However, he has offered no authority to support this unsubstantiated assertion. Petitioner is the one who had the burden of proving his case. Speaks v. State, 660 S.E.2d 512, 514 (S.C. 2008) [Applicant has burden of proof in PCR proceedings.].

23

appellate counsel's representation is not ineffective if she makes an informed decision based on reasonable professional judgment. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Petitioner produced no witnesses or evidence in his PCR proceedings to support his assertions with regard to ineffective assistance of appellate counsel, and he has therefore failed to show any prejudice, which is necessary, nor has he presented evidence to prove this claim. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; cf. Underwood v. State, 425 S.E.2d 20, 22 (S.C.1992) [prejudice from counsel's performance could not be shown where witnesses did not testify at PCR hearing]. Therefore, Ground Three of the Petition is without merit and should be dismissed.

### C.
#### (Ground Four)
#### Ineffective Assistance of Substitute Trial Counsel
#### Procedural Bar Discussion

With respect to Petitioner's ineffective assistance claims asserted in Ground Four of his Petition, it is readily apparent that the allegations raised in issues 3-4 and 6-16 contained in Ground Four of the Petition were not previously properly raised and exhausted in his state court proceedings, as they were not properly raised and ruled on in Petitioner's PCR case. Cf. Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999), cert. denied, 528 U.S. 959 (1999)["In order to avoid procedural default, the 'substance' of [the] claim must have been 'fairly presented' in state court . . . . That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.](quoting Townes v. Murray, 68 F.3d 840, 846 (4th Cir. 1995)(quoting Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.



1994)).[12] Accordingly, these issues were also not properly preserved in Petitioner's APCR and lower state court proceedings. See Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C. Sept. 25, 2009)[Finding that where Petitioner attempted to raise an issue in his PCR appeal, the issue was procedurally barred where the PCR court had not ruled on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); State v. Dunbar, 587 S.E.2d at 693-694 ["In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."]; cf. Miller v. Padula, No. 07-3149, 2008 WL

---

[12]If Petitioner wanted these issues considered and ruled on by the PCR court and they were not, a motion for the PCR court to reconsider its order denying his APCR was necessary with regard to the issues not raised in his PCR if Petitioner wanted to assert or preserve these issues. Al-Shabazz v. State, 527 S.E.2d 742, 747 (S.C. 2000)[A "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order."] (citing Pruitt v. State, 423 S.E.2d 127, 128 n. 2 (S.C. 1992)[issue must be raised and ruled on by the PCR judge in order to be preserved for review]; Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007)["Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review . . . ."]; Humbert v. State, 548 S.E.2d 862, 865 (S.C. 2001); Plyler v. State, 424 S.E.2d 477, 478-480 (S.C. 1992)[issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review]; see also Rule 59(e), SCRCP [providing avenue for any party to move to alter or amend a judgment if they believe necessary matters not addressed in original order]; Primus v. Padula, 555 F.Supp.2d 596, 611 (D.S.C. 2008); Smith v. Warden of Broad River Correctional Inst., No. 07-327, 2008 WL 906697 at * 1 n. 1 (D.S.C. Mar. 31, 2008); McCullough v. Bazzle, No. 06-1299, 2007 WL 949600 at * 3 (D.S.C. Mar. 27, 2007)(citing Al-Shabazz, 577 S.E.2d at 747). While the Fourth Circuit has held that, prior to the decision of the South Carolina Supreme Court in Marlar, South Carolina courts had not consistently applied the procedural bar based on a PCR applicant's failure to file a Rule 59(e) motion; see Bostick v. Stevenson, 589 F.3d 160, 164-165 (4th Cir. 2009); here, the PCR court's order was filed on November 15, 2010, well after the South Carolina Supreme Court's decision in Marlar in November of 2007. Marlar, 653 SE.2d 266. Therefore, Petitioner's failure to file a Rule 59(e) motion regarding issues 3-4 and 6-16 in Ground Four bars these claims. See Marlar v. Warden, Tyger River Correctional Institution, 432 Fed.Appx. 182, 186-188 (4th Cir. May 25, 2011).

1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008); Wicker v. State, 425 S.E.2d 25, 26 (S.C. 1992).

Because Petitioner did not properly raise and preserve these issues in his APCR proceedings, they are barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue these issues, they are fully exhausted. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though exhausted, because these issues were not *properly* pursued and exhausted by the Petitioner in the state court, federal habeas review of these claims is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d

26

765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

Petitioner argues in his memorandum in opposition that, to the extent his claims are procedurally defaulted, he should still be allowed to pursue them because any default is due to ineffective assistance of his PCR counsel.    Specifically, PCR counsel's failure to file a supplemental memorandum after the PCR hearing and/or a Rule 59(e) motion to preserve the issues on appeal. See Petitioner's Memorandum in Opposition to Summary Judgment, p. 11.

The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray, 477 U.S. at 488; see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)("[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"); Smith v. Dixon, 14 F.3d 956, 973 (4th Cir. 1994)(en banc).  Even so, while ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation; Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996); and this Court has previously held that ineffective assistance of *PCR counsel* (as opposed to trial or direct appeal counsel) does not amount to an independent

27

constitutional violation, and is not therefore "cause" for a procedural default. Murray v. Giarratano, 492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131 F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128 F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932 (7th Cir. 1992); Gilliam v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).

However, the Supreme Court recently held that its 2012 Martinez decision provided

that a "narrow exception" should "modify the unqualified statement in Coleman that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." Martinez, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons. First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system . . . . Indeed, the right to counsel is the foundation for our adversary system." Id. at ___, 132 S.Ct. at 1317.

Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim. Id. at ___, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. Id. at ___, 132 S.Ct. at 1317-1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." Id. at ___, 132 S.Ct. at 1318.

Third, where the State consequently channels initial review of this constitutional claim

to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were <u>Coleman</u> read broadly) deprive a defendant of any review of that claim at all. <u>Martinez, supra</u> at ___, 132 S.Ct. at 1316.

We consequently read <u>Coleman</u> as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." <u>Martinez, supra</u> at ___, 132 S.Ct. at 1318-1319, 1320-1321.

<u>Trevino v. Thaler</u>, 133 S.Ct. 1911, 1917-1918 (2013); <u>see also</u> <u>Gray v. Pearson</u>, No. 12-5, ___ Fed. Appx. ___, 2013 WL 2451083 at * 2 (4th Cir. June 7, 2013)["The Supreme Court had previously held in <u>Coleman</u> that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish "cause" to excuse a procedural default." <u>Coleman</u>, 501 U.S. at 757. The Court established an exception to that rule in <u>Martinez</u>."].

Therefore, because, under South Carolina law, a claim of ineffective assistance of trial counsel is raised in an APCR; <u>cf.</u> <u>State v. Felder</u>, 351 S.E.2d 852 (S.C. 1986); <u>Bryant v. Reynolds</u>, No. 12-1731, 2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); <u>Gray</u>, 2013 WL 2451083, at * 4, fn *; Petitioner's claim of ineffective assistance of PCR counsel as "cause" for his default has been considered hereinbelow under the revised standard of <u>Martinez</u> and <u>Trevino</u> with regard to Ground Four claims 3-4 and 6-16.

Under the first requirement of the <u>Martinez</u> exception, the Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one,

29

which is to say that the [petitioner] must demonstrate that the claim has some merit." Gray, 2013 WL 2451083 at * 2. Therefore, Petitioner must show that his PCR counsel's representation was objectively unreasonable during his post-conviction proceeding and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. Ford v. McCall, No. 12-2266, 2013 WL 4434389 at *11 (D.S.C. Aug. 14, 2013)(citing Horonzy v. Smith, No. 11-234, 2013 WL 3776372 at * 6 (D.Idaho Sept. 12, 2012)["The application of the Strickland test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one."]. For the reasons discussed hereinbelow, Petitioner has failed to show entitlement to relief under this standard.[13]

### (Claim 1)

In Ground Four (Claim 1), Petitioner contends that his substitute trial counsel (Poole) was ineffective in failing to represent him in county magistrate's court. This issue was raised in Petitioner's PCR case, and Poole testified that he was appointed to represent Petitioner on the burglary charges and believed Attorney Chip Weatherford may have been Petitioner's counsel in his county magistrate court case on the traffic offenses. (R.p. 607). The PCR court found that Petitioner's testimony lacked credibility on this issue and that counsel's testimony was credible; (R.p.

---

[13]Because of the voluminous number of defaulted claims (3-4 and 6-16), they are dealt with hereinabove as they arise in chronological order and reviewed to determine if any constitute "substantial claims" under the Martinez exception. Each defaulted claim is identified as such in the heading for that claim.

634); and Petitioner has not shown the state court's credibility findings on this issue to be stark and clear error. Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)["[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear. . . . Indeed, 'federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."(quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983).]

Furthermore, the documentary evidence also shows that Weatherford represented Petitioner in county magistrate court. See Court Docket No. 21-9, pp. 132-133. Therefore, the record does not show that Poole was appointed to represent Petitioner on his traffic charges, nor did Poole have any duty to appear to represent him in county magistrate court. This issue is without merit and should be dismissed.

### (Claims 2 and 5)

In Ground 4 (Claims 2 and 5), Petitioner contends that Poole was ineffective for failing to sufficiently investigate the traffic stop that lead to his arrest including, but not limited to, not obtaining copies of any traffic tickets or viewing any videos from the police car dash cam. The PCR court addressed Petitioner's complaints regarding ineffective assistance of counsel regarding the traffic stop, and concluded that Petitioner offered no testimony or evidence as to what he believed Poole would have discovered had he conducted any additional investigations. The PCR court held that Poole's failure to conduct an independent investigation did not constitute ineffective assistance of counsel when Petitioner's claim was only supported by speculation as to result. The PCR court also found that Poole was well prepared to argue against the traffic stop and the evidence obtained as a result and that Petitioner had failed to meet his burden of proof as to this claim. (R.p. 633). The



undersigned can find no reversible error in these findings.

At trial, Deputy Richard Turner, a deputy sheriff for the Cherokee County Sheriff's Office, testified that he observed the car Petitioner was driving run a stop sign and pulled over the vehicle. (R.pp. 172, 175-176). Turner testified that he then issued two courtesy summons to the Petitioner for disregarding the stop sign and for not having his driver's license in his possession, following which he placed the Petitioner under arrest. (R.p. 177). Turner was cross examined by Poole regarding his incident report and testified that he refers to traffic tickets as "courtesy" summons. Turner further testified that Petitioner pled guilty to not having his driver's license in his possession and was sentenced to time served on that charge, and that after Petitioner requested a bench trial on the disregarding a stop sign charge and received one, he had been found guilty on that charge. (R.pp. 181-182). At the time of Petitioner's trial on the charges related to this habeas petition, he had appealed the guilty verdict on the disregarding a stop sign charge, and was awaiting a trial in county magistrate court apparently related to that appeal. (R.p. 182).[14]

Poole testified at Petitioner's PCR hearing that he did not believe the traffic stop was unreasonable because he knew that the testimony at trial was going to be that the stop was the result of the reporting of the description of the car. Poole testified that he also knew that officers were on the lookout for that type of car and that the testimony was going to be that the driver of the car that matched that description disregarded a stop sign, and that since he knew what the testimony was

---

[14]At Petitioner's PCR hearing, PCR counsel Richey represented to the PCR court that the ticket was subsequently dismissed or not pursued after Petitioner received the LWOP sentence. (R.p. 559). Based on Richey's further representations to the PCR court and documentary evidence, it appears that prior to dismissal of the ticket, the matter was remanded for another trial after Petitioner's appeal. (R.p. 560); see also Court Docket No. 21-9, pp. 132-133 [counsel's letter and order on Ticket no. 26822CR - disregarding stop sign].



going to be that he didn't focus as much on the stop.  (R.p. 608).

Although Petitioner apparently makes some assertions now that there may not have been any traffic ticket, that assertion is contradicted by his own arguments that Thompson and Poole should have represented him in county magistrate court, which, based on his arguments, appears to be related to his having received a ticket from the traffic stop.  See discussion (Grounds Two and Four (Claim 1)), supra.  Further, the record in general does not support Petitioner's contention that there were no tickets issued.  (R.pp. 177-181); see also Court Docket No. 21-9, pp. 132-133 [counsel's letter and order on Ticket no. 26822CR - disregarding stop sign]; Court Docket No. 21-4, pp. 449, 451 [Booking Report and Incident Report for Tickets 26822CR and 26821CR].  Rather, it appears that the traffic tickets were simply not introduced at trial.  The record also shows that Deputy Richard Turner had an objectively reasonable and articulable suspicion to stop Petitioner, as Turner observed Petitioner running a stop sign, and had also been instructed to go to the area and look for the vehicle that Petitioner was driving because that vehicle had been identified in connection with a burglary that occurred earlier in the day.  (R.pp. 173-176); see also discussion (Ground Four Claim 4).

Hence, Petitioner has not shown how, even assuming that Poole had requested the tickets or a video, assuming one exists, be produced, that the outcome of his trial would have been different.  The PCR court specifically found that Petitioner offered no testimony or evidence as to what he believes Poole would have discovered if he had conducted additional investigations.  Cf. Bannister v. State, 509 S.E.2d 807, 809 (S.C.1998) ["This Court has repeatedly held a PCR applicant *must* produce the testimony of a favorable witness *or otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order to establish prejudice from the witness' failure



33

to testify at trial."]; <u>Glover v. State</u>, 458 S.E.2d 539, 540 (S.C.1995)["[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."]; <u>Clark v. State</u>, 434 S.E.2d 266, 267–268 (S.C.1993) [pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different].

Accordingly, as Petitioner produced no witnesses or evidence in his PCR proceedings to support his assertions with regard to his ineffective assistance of counsel claim in Ground Four (claims 2 and 5), he has failed to show any prejudice, which is necessary, nor has he presented evidence to prove these claims. <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Therefore, claims 2 and 5 of Ground Four are without merit and should be dismissed.

### (Claim 3 - defaulted)

In Ground Four (Claim 3), Petitioner contends that Poole was ineffective for failing to make a motion to have the shoe and shoe print evidence[15] and Petitioner's in-custody statements[16] excluded because all of this evidence was obtained as a result of an "illegal pretextual traffic stop arrest" which violated his Fourth Amendment rights. However, as previously discussed, the record shows that Deputy Richard Turner had an objectively reasonable and articulable suspicion to stop

---

[15]Investigators obtained a shoe-print impression from the ground area outside the Gallman residence, where the burglary took place. (R.pp. 203-208). Petitioner's shoe was also introduced at trial. <u>Id</u>.

[16]After Petitioner was arrested by Turner following the traffic stop, he gave a statement to investigators. (R.pp. 237-243).



Petitioner. Turner observed Petitioner running a stop sign. (R.p. 175); see also discussion (Ground Four Claim 2). Furthermore, Turner had been instructed to go to the area and look for the vehicle that Petitioner was driving because that vehicle had been identified in connection with a burglary that occurred earlier in the day. (R.pp. 173-176).

Accordingly, Petitioner has not shown that Turner did not have a reasonable suspicion to perform an investigatory stop of the vehicle. See United States v. Sokolow, 490 U.S. 1, 7 (1989)(quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)[finding a brief investigative stop to be permissible if the police officer "has a reasonable suspicion supported by articulable facts that 'criminal activity may be afoot,' even if the officer lacks probable cause."]. Hence, Petitioner has not shown that counsel was ineffective for failing to assert that the evidence obtained was in violation of the Fourth Amendment.[17]  See Hough v. Anderson, 272 F.3d 878, 898 (7th Cir. 2001). Additionally, by failing to show any substantial ineffective assistance on this claim by trial counsel, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 3 in Ground Four is procedurally barred from consideration by this Court. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."].

### (Claim 4 - defaulted)

In Ground Four (Claim 4), Petitioner contends that his trial counsel was ineffective for failing to inform Petitioner that he had a right to testify at the Jackson v. Denno[18] hearing, where

---

[17]Petitioner also argues other grounds for the inadmissibility of this evidence, which are discussed separately in this opinion.

[18]378 U.S. 368 (1964).

35

the trial court found that "the State [had] shown, by the preponderance of evidence, that the professionals complied with Miranda[19] or the alleged confession[20] with Miranda, and that, by the preponderance of the evidence, it was voluntary", and therefore allowed the confession it to be introduced at the trial of the case. (R.pp. 52-53). At the PCR hearing, Petitioner testified that counsel never asked him if he wanted to testify at the Jackson v. Denno hearing. (R.p. 601). While trial counsel testified at the PCR hearing that he reviewed the waiver of rights form that Petitioner signed before making a statement to the police, and that he would have discussed that statement with the Petitioner, trial counsel was never asked at the PCR hearing about whether he had informed Petitioner that he had a right to testify at the Jackson v. Denno proceeding. (R.pp. 607-617). Counsel did testify that he filed a motion to keep Petitioner's statement out, but that this motion was denied. (R.p. 613).

For his part, Petitioner presented no evidence or testimony to the PCR court as to what he could have testified to or provided to effect the outcome of the proceedings. In his response in opposition, Petitioner makes vague allegations without any specifics about Detective Mike Fowlkes[21] being allegedly allowed to give false testimony in that proceeding. There is a subsequent discussion of Fowlkes' testimony and Petitioner's allegations concerning this testimony in Ground Six. However, the undersigned finds that Petitioner's allegations with regard to Fowlkes in Ground Six to be without merit; see discussion (Ground Six), infra; and in any event they do not support his

---

[19]Miranda v. Arizona, 384 U.S. 436 (1966).

[20]While the trial court used the term "confession", Petitioner actually only provided a statement of where the burgled items were to be found, not that he had committed the crime of burglary. See (R.p. 499). See also (R.pp. 238-242).

[21]Fowlkes was a captain with the Cherokee County Sheriff's Department at the time of Petitioner's trial and investigated the burglaries and charges in this case and interviewed Petitioner regarding those incidents. (R.pp. 41-51, 228-229).

assertions in his Claim 4.

Therefore, Petitioner has failed to show ineffective assistance of counsel on this basis. Additionally, by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, Claim 4 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159.

### (Claim 6 - defaulted)

In Ground Four (Claim 6), Petitioner contends that Poole was ineffective in failing to object to the testimony of Deputy Turner regarding the issuance of traffic tickets. Petitioner claims that he was denied his right to confront the evidence against him because the State did not produce the traffic tickets during trial and because trial counsel did not see the traffic tickets.

As the Respondent correctly points out, Petitioner has not cited any authority that the State was required to produce such evidence at trial. Trial counsel cross examined Turner regarding the traffic stop and the issuance of the traffic tickets; (R.pp. 179-182); so it is not clear how the testimony regarding them would be a violation of the Confrontation Clause. Further, the tickets issued by Turner were not used as evidence against Petitioner in his trial, and Petitioner has presented no evidence that if the traffic tickets had been produced, it would have affected the outcome of his trial. See also discussion (Ground Four Claims 2 and 5), supra.

Therefore, even assuming arguendo that trial counsel's performance was deficient, Petitioner has failed to show how he was prejudiced. Additionally, by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 6 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159.



**(Claim 7 - defaulted)**

In Ground Four (Claim 7), Petitioner contends that Poole was ineffective for failing to object to the gun evidence which was introduced at trial. Specifically, Petitioner contends that Poole's failure to object to Kenneth Gallman's identification and testimony regarding the guns was ineffective assistance of counsel.

At trial, Gallman identified the guns, testified that the guns were taken from the safe at his home, and that the same guns were returned to him by Detective Mike Fowlkes. (R.pp. 145-147). Fowlkes testified at trial that the three guns introduced at trial were the same ones that he recovered from the Petitioner and returned to Gallman. (R.pp. 240-241). Petitioner has made no showing that the guns which he showed Fowlkes where to locate were not the same ones identified at trial. Therefore, Petitioner has made no showing that his counsel was ineffective for failing to object to the identification and testimony regarding these guns.

Additionally, by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 7 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159.

**(Claim 8 - defaulted)**

In Ground Four (Claim 8), Petitioner contends that Poole was ineffective for failing to object to the testimony of Jimmy Henson, who testified as an expert in footware impressions. In a pretrial motion, Petitioner's counsel moved to exclude Henson's testimony on the grounds that it was more prejudicial than probative and should have been excluded under S.C.R. Evid. 403. (R.pp. 36-39). The trial court stated at that time,

Here's what I'm going to do: This is a motion in limine. I doubt that I'm going to



38

exclude it under 403, the testimony. As in all cases, crime scene evidence; a pair of shoes, tire marks, fingerprints, and et cetera, that normally goes to the jury after any type of analysis, including 403.

I think it goes more to the weight of the testimony as opposed to the admissibility. And, obviously, you can cross examine him on that opinion to Kingdom come on that. As far as opinion on smudge marks on the glass being made by these particular shoes, I'll just have to hear what he's got to say.

(R.p. 38).

Then, after the State moved at trial to qualify Henson as an expert, Petitioner's counsel cross examined him on his qualifications. (R.pp. 198-204). The trial judge then qualified him as an expert. (R.pp. 204-205).

Petitioner contends that Poole was ineffective for failing to object and preserve this issue on appeal. However, the trial court had indicated prior to the trial that it intended to allow Henson to testify as an expert (he had also previously testified in another trial as an expert), and since counsel was not questioned on this issue at the PCR hearing, the record does not contain explicit reasons for his decision not to object when Henson was allowed to testify at trial. While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner. Id. at 688-689; Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), cert. denied, 505 U.S. 1230 (1992); Horne v. Peyton, 356 F.2d 631, 633 (4th Cir. 1966), cert. denied, 385 U.S. 863 (1966); Burger v. Kemp, 483 U.S. 776 (1987); see also Harris v. Dugger, 874 F.2d 756, 762 (11th Cir. 1989),



cert. denied, 493 U.S. 1011 (1989) [An informed decision by trial counsel should not be second guessed by a reviewing court.].

Furthermore, Petitioner has presented no evidence to show that the trial court would not have allowed Henson to testify as an expert, as it had earlier indicated it would do, if counsel had objected at trial. Petitioner has also failed to make any showing that such a ruling by the trial court would have been reversed on appeal if a contemporaneous objection had been made so as to preserve the issue at trial. Nor has Petitioner shown the necessary prejudice with regard to this claim. Strickland v. Washington, supra; Beaver v . Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996); Bassette v. Thompson, 915 F.2d 932, 939 (4th Cir. 1990). Even if Henson had not been qualified as an expert in shoe impressions and had not testified regarding such, Petitioner has not shown that the outcome of his trial would have been different based on the overwhelming evidence present at trial [see discussion (Ground Four Claim 3)].

Therefore, Petitioner has failed to show that his counsel was ineffective on this basis, and by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 8 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159.

### (Claim 9 - defaulted)

In Ground 4 (Claim 9), Petitioner contends that his counsel was ineffective for failing to have the DNA evidence from the Gallman home tested. Poole testified at the PCR hearing that he was aware that the blood evidence and hair evidence had been sent for analysis, and was also aware that the results, or lack thereof, were not going to be used at trial. (R.pp. 608-609). Therefore, Poole testified that he did not follow up further on that issue. (R.p. 609). No ineffective assistance of



40

counsel is shown in the evidence or this testimony.

First, the Respondent has attached the South Carolina Law Enforcement Division ("SLED") Forensic Services Laboratory Report results to its motion for summary judgment as Exhibit 13. See Court Docket No. 21-16. The Report reflects that DNA analysis was performed on Items 3.1, 5.1 and 7.1, all of which were hair from an outside window sill. The results section states "[i]nsufficient human DNA was extracted from items 3.1 and 5.1" and that "[n]o DNA profiles were developed from item 7.1." Id. The Report also states that no analysis was performed on Item 9 (Control Swab), and as for Items 11, 12, 13 and 14 (which were apparently swabs from the car that Petitioner was driving), a notation was made for each "[n]o blood detected." Id.

Petitioner has not contested the validity of the Report, but rather argues that his counsel should have requested further testing. Cf. Saylors v. Hartford, No. 11-1414, 2011 WL 3704010 at *2  n. 1 (D.S.C. Aug. 23, 2011)[discussing the allowance of considering official public records which are uncontested and central to a Complaint in the context of a motion to dismiss]. However, at the PCR hearing, Richey, when questioning Poole on Petitioner's behalf, acknowledged the risk to Petitioner if further testing had been done which came back positive. He then proceeded to question Poole about the fact that if further testing was done which came back negative, that it could have been used to benefit Petitioner. (R.pp. 608-610).  However, Poole testified that he knew there was not going to be the introduction of any DNA type of evidence at trial.  (R.p. 609). Petitioner's argument that Poole should have insisted on testing which may have benefitted him is pure speculation, as it is also possible the results could have disadvantaged him.  Counsel's tactical and strategic choice made after due consideration does not constitute ineffective assistance of counsel. Strickland, 466 U.S. at 689.  Petitioner has not overcome the strong presumption given to

41

counsel's performance and decisions; Bunch v. Thompson, supra; Horne, 356 F.2d at 633; Burger v. Kemp, supra; see also Harris, 874 F.2d at 762; and the undersigned can find no reversible error in this record. Cf. Moorehead v. State, 496 S.E.2d 415, 417 (S.C. 1998)["Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result."]. Nor has Petitioner shown the necessary prejudice with regard to this claim. Strickland v. Washington, supra; Beaver, 93 F.3d at 1195; Bassette v. Thompson, supra.

Additionally, by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 9 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159. This issue should be dismissed.

### (Claim 10 - defaulted)

In Ground Four (Claim 10), Petitioner contends that his counsel was ineffective for failing to request a jury charge of receiving stolen goods. However, Petitioner's trial counsel testified that he did not recall Petitioner ever telling him that he had received or bought stolen goods; (R.p. 615); and in any event Petitioner has not shown that this charge would have been appropriate based on the evidence presented in his trial. See State v. Pace, 425 S.E.2d 73, 75 (S.C.Ct.App. 1992)[finding in a prosecution for grand larceny that the defendant was not entitled to jury instructions explaining the crimes of accessory after the fact and receiving stolen goods, even though no one had actually seen him steal the goods, where there was no evidence of another individual's involvement in the crime, and the only explanation as to how the defendant came into possession of the stolen goods was as the principle in the larceny], rev'd on other grounds in, 447 S.E.2d 186 (S.C.

1994); see also S.C.Code Ann. § 16-13-180.

In his response in opposition, Petitioner asserts that his trial counsel injected this theory into the case in his closing argument when he argued to the jury that "possession of property thereafter is not entry." (R.p. 285). However, counsel's closing arguments are not evidence, and Petitioner has not shown any evidence in this case that would have entitled him to jury instructions of receiving stolen goods.  See Sosobee v. Leeke, 362 S.E.2d 22, 24 (S.C. 1987)[closing argument not evidence]; see also Pace, 425 S.E.2d at 75; S.C.Code Ann. § 16-13-180. Accordingly, Petitioner has not shown ineffective assistance of counsel on this claim, and by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue.  Accordingly, claim 10 in Ground Four is procedurally barred from consideration by this Court.  Rodriguez, 906 F.2d at 1159.

### (Claim 11 - defaulted)

In Ground 4 (Claim 11), Petitioner contends that his counsel was ineffective for failing to request a Neil v. Biggers[22] hearing with regard to Gallman's identification of the Petitioner.  Since Petitioner did not properly raise this issue before the PCR court, the PCR court did not make factual findings with regard to this claim.  However, as Respondent correctly points out, even assuming arguendo that counsel should have requested a Neil v. Biggers hearing and such a hearing would have prevented the admission of this evidence, Petitioner has not shown the necessary prejudice.

At trial, Gallman identified Petitioner as the man she witnessed acting strangely on her porch the day before her home was burglarized.  However, the State also submitted evidence that Gallman wrote down the tag number of the vehicle the man she saw was driving that day, that the tag

---

[22]409 U.S. 188 (1972)[setting forth standard for whether in-court identification is admissible].

number matched the vehicle owned by Petitioner's girlfriend, that Petitioner drove the vehicle the day before the burglary (when Gallman witnessed him on her front porch) and the day of the burglary, that the guns stolen from Gallman's house were in Petitioner's bedroom, and that he took police to another location where he claimed that he disposed of the other items stolen from the Gallman house. (R.pp. 109-129, 134-164, 172-178, 228-246). Based on the overwhelming evidence presented at trial, Petitioner has not shown that he was prejudiced by Gallman's in-court identification.

Accordingly, Petitioner has failed to show ineffective assistance of counsel regarding this issue, and by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 11 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159.

### (Claim 12 - defaulted)

In Ground Four (Claim 12), Petitioner contends that his counsel was ineffective for failing to object to improper comments and testimony of a witness on Petitioner's failure to give a written statement and invoking his right to counsel. Specifically, Petitioner contends that his counsel should have objected to Detective Fowlkes' testimony that when they attempted to speak to Petitioner a third time and obtain a written statement, that "he said that he had done enough and he wanted his attorney. And the interview ceased at that time." (R.p. 244); see also (R.p. 245). Petitioner argues that his counsel was ineffective for failing to protect his right to remain silent.

In Doyle v. Ohio, the United States Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." Pagan v. Brown, 485 Fed.Appx. 454, 456 (2d Cir. June 7, 2012)(quoting Doyle, 426 U.S. at 619)). In this case, however, Petitioner

44

had talked with investigators twice before invoking his right to remain silent, and it was in the context of discussing the series of events and determining how Fowlkes obtained Petitioner's address that Fowlkes testified Petitioner invoked his right to an attorney, and that he ceased interviewing him at that time. (R.p. 244). Fowlkes also talked about preparing another pre-interrogation form when he was, during this same contact with Petitioner, trying to get a written statement, with the Solicitor then asking Fowlkes if it was on that waiver form, where Petitioner had put the address which was apparently at issue, whether Petitioner actually lived there. (R.p. 245). Hence, the testimony was not being used for impeachment and was not argued to the jury. Pagan, 485 Fed.Appx. at 456-457; cf. Ortega v. Clark, No. 08-1657, 2011 WL 836436, at * 20-21 (E.D.Cal. Mar. 3, 2011).

Further, even assuming that the testimony was improper and counsel should have objected, any error was harmless in this case when the comments are viewed in the context of the exchange, no arguments were made to the jury regarding Petitioner's silence, and coupled with the overwhelming evidence of guilt in this case. Koch v. Puckett, 907 F.2d 524, 528 (5th Cir. 1990)[Finding that even if testimony was impermissible, an isolated comment would constitute harmless error]; Pagan, 485 Fed.Appx. at 456-457; Peavy v. Secretary, Dep't of Corrections, No. 05-1985, 2007 WL 812612 at * 4 (M.D.Fla. June 22, 2007)[finding that even if witness' comment regarding defendant's silence during interview was improper, it was harmless error]; see also (R.pp. 109-129, 134-164, 172-178, 228-246) [evidence showing substantial finding of guilt].

Therefore, even assuming arguendo that Petitioner's counsel was deficient for failing to object, Petitioner has failed to show prejudice, or that his trial was rendered fundamentally unfair by the admission of evidence regarding his failure to give a written statement and requesting counsel. Additionally, by failing to show any substantial ineffective assistance on this claim, Petitioner has

failed to show cause for his procedural default on this issue. Accordingly, claim 12 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159. This claim is without merit and should be dismissed.

**(Claim 13 - defaulted)**

In Ground Four (Claim 13), Petitioner argues that Poole was ineffective for failing to object to the Solicitor's closing argument. Specifically, Petitioner contends that the Solicitor vouched for witnesses, commented improperly on Petitioner's character, and made improper comments when referring to Petitioner driving through an intersection (i.e., that the officer saw Petitioner "blow through that intersection") which resulted in him being stopped for a traffic violation. See Petitioner's Memorandum in Opposition, pp. 55-56. See generally, (R.pp. 268-278).

Under South Carolina law, the solicitor cannot vouch for the credibility of a witness by expressing or implying his personal opinion as to the witnesses' truthfulness. Improper vouching occurs when the solicitor "places the government's prestige behind a witness by making explicit personal assurances of a witness' veracity, or where a prosecutor implicitly vouches for a witness' veracity by indicating information not presented to the jury supports the testimony." State v. Shuler, 545 S.E.2d 805, 818 (S.C. 2001). However, as long as the solicitor stays within the record and its reasonable inferences, he has a right to give his version of the testimony and comment on the weight and credibility of the witnesses during the trial. See State v. Raffaldt, 456 S.E.2d 390, 392 (S.C. 1995)[where case was essentially a swearing contest, it was proper for solicitor to comment on the credibility of the witnesses by contrasting the testimony of the defendant and the state's witnesses]; State v. New, 526 S.E.2d 237 (S.C.Ct.App. 1999)[solicitor's argument that state's witness had nothing to gain because he would be considered a rat in prison for testifying was a reasonable



comment on the credibility of witnesses in the case, especially where believability was a crucial issue in the trial]; see generally United States v. Necoechea, 986 F.2d 1273, 1279 (9th Cir. 1993)[no vouching when prosecutor argued that "if [the witness is lying, why] isn't she doing a better job of it", and stated "I submit . . . that she's not lying", as the "submit" statements were merely permissible inferences from the record, and the prosecutor's argument that the witness was telling the truth was one he had to make to convict the defendant); United States v. Livingston, 21 Fed.Appx. 564, 566 (9th Cir. 2001)[no vouching where prosecutor stated "we would submit [the officer is] a decent, honest cop", and "we would submit that [the witness], when you evaluate his testimony as a whole, was truthful and credible", as the statements were prefaced by "we submit", and were book ended by statements that made it clear the credibility determination was for the jury.]. Additionally, the Respondent points out that counsel may not have objected in order to minimize objections during the closing arguments. See Driscoll v. Delo, 71 F.3d 701, 714 (8th Cir. 1995)[finding counsel's general trial strategy to minimize objections to prosecution's closing argument is objectively reasonable].

Based upon a review of the record, Petitioner has not shown his counsel was ineffective for failing to object to the solicitor's comments pertaining to any witness. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Further, even assuming arguendo that the solicitor's comments regarding his vouching allegations, the comments about Petitioner (or his shoes) being "infamous", and Petitioner "blow[ing]" through an intersection prior to the traffic stop were improper, Petitioner has still not shown that he is entitled to relief on this claim, as he has failed to show the requisite prejudice.

While it is a fundamental precept of American criminal jurisprudence that a prosecutor may not do or say anything that denies a defendant due process; Donnelly v. DeChristoforo, 416 U.S.

47

637 (1974); Berger v. United States, 295 U.S. 78, 88 (1935)["He [the solicitor] may prosecute with earnestness and vigor--indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones."]; when considering whether comments by a prosecutor were improper, "the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly, 416 U.S. at 643). "Moreover, the appropriate standard of review for such a claim on a writ of habeas corpus is the 'narrow one of due process, and not the broad exercise of supervisory power.'" Id. (quoting Donnelly, 416 U.S. at 642). Hence, this court must consider whether the comments made so infected Petitioner's trial with unfairness as to make the resulting conviction a denial of due process; see California v. Ramos, 463 U.S. 992, 998-99 (1983); and in conducting this review, such comments being undesirable or even "universally condemned" is not alone enough to warrant reversal. Darden, 477 U.S. at 180-81; see also Donnelly, 416 U.S. at 643. In United States v. Harrison, 716 F.2d 1050 (4th Cir. 1983), cert. denied, 466 U.S. 972 (1984), the Fourth Circuit set forth the following four factors to be examined to determine whether the prosecutor's comments were so damaging as to require reversal:

> (1) the degree to which remarks misled the jury and prejudiced the defendant;
>
> (2) whether remarks were isolated or extensive;
>
> (3) whether absent remarks competent evidence established guilt; and
>
> (4) whether comments were deliberately placed before the jury to divert attention to extraneous matters.

Id. at 1052.

Here, after a careful review of the record pursuant to the standards set forth by the



Fourth Circuit in <u>Harrison</u>, the undersigned does not find that reversal is warranted in this case. The undersigned has carefully reviewed the transcript of the closing arguments, the allegations of Petitioner, the jury instructions from the court, and the memoranda of the parties, and does not find that the solicitor's comments so infected the trial with unfairness as to deny the Petitioner due process. The solicitor's comments concerning the witnesses who testified, use of the term "infamous" to describe the crime of burglary, and that Petitioner had run through a stop sign prior to his traffic stop, were not such as to mislead the jury in any way, and there was competent evidence on which the jury could have established Petitioner's guilt, notwithstanding the cited remarks. Hence, applying the four-factor test employed by the Fourth Circuit Court of Appeals, even assuming arguendo that the cited comments were improper, they were not so damaging as to require reversal in this case. <u>United States v. Harrison</u>, 716 F.2d at 1052; <u>California v. Ramos</u>, 463 U.S. at 998-99.

Finally, although Petitioner speculates that the outcome may have been different if his counsel had objected, he has produced no evidence to support his assertions. <u>Cf.</u> <u>Green v. State of South Carolina</u>, 569 S.E.2d 318, 324 (S.C. 2002)[Speculation as to whether a juror wished to convict not sufficient to warrant relief]. Nor has he shown that he was prejudiced by any impropriety in the Solicitor's closing argument. <u>Bradford v. Whitley</u>, 953 F.2d 1008, 1012 (5th Cir. 1989)[Speculation and conjecture does not satisfy the prejudice prong of <u>Strickland</u>]. Accordingly, Petitioner has not shown any prejudice from these alleged deficiencies. Additionally, by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 13 in Ground Four is procedurally barred from consideration by this Court. <u>Rodriguez</u>, 906 F.2d at 1159.

49

**(Claim 14 - defaulted)**

After Petitioner was convicted of first degree burglary, the trial court considered the State's motion to seek a sentence of life without parole based on the fact that the Petitioner had previous convictions that made him eligible for such a sentence under S.C. Code Ann. § 17-25-45. (R.p. 308). In Ground 4 (Claim 14), Petitioner contends that his counsel was ineffective for failing to accept the trial court's offer to take ten (10) days to formulate an argument that Petitioner should not be sentenced to life without parole.

The trial court told Poole that it intended to proceed with sentencing at that time, but would allow him ten (10) days to file any post-trial motions on this issue. (R.p. 309). However, Poole was already prepared to argue against a life without parole sentence and proceeded to direct the court's attention to <u>State v. Woody</u>, 596 S.E.2d 907 (S.C. 2004), wherein the court held that although there were two different victims in that case (an individual and the store itself), the robberies were a "single" incident for purposes of § 17-25-50 [statute providing that closely connected offenses can be considered as one offense]. (R.pp. 309-311). Poole argued that the incidents which resulted in Petitioner's prior charges were so closely related that they constituted one event, one incident, or "spree". (R.p. 310). However, according to the record, Petitioner's earlier charges resulted from incidents that occurred on September 22, September 24, September 25, and September 27, and the trial judge advised counsel that he had carefully read <u>Woody</u> that morning and found it inapplicable to the facts involved in this case. (R.pp. 310-311).

In his response in opposition to summary judgment, Petitioner contends that Poole was ineffective for not taking the additional ten (10) days the Judge offered for a post-trial motion to formulate arguments on the following four grounds: 1) that he was never properly served with notice



by the State to seek life without parole; 2) that the earlier convictions should have been counted as a single incident or spree; 3) that § 17-25-45(A)'s [setting forth standard for receiving a life sentence] application to him was error because it would have involved a retroactive application; and 4) that there was no evidence in the record that he was represented by counsel on the earlier charges or that he waived having counsel on the other charges so they should not count under § 17-25-45(A). See Memorandum in Opposition to Summary Judgment, pp. 58-59.

With respect to whether he was properly served with notice, that issue is raised and discussed herein as an independent ground in Ground Five, and is found to be without merit. See discussion (Ground Five), infra. Therefore, Petitioner has made no showing that his counsel was deficient for failing to make such an argument, or that even if his counsel had argued that issue to the Court in a post-trial motion, it would have changed the outcome of the proceeding. Accordingly, Petitioner made no showing of prejudice with respect to this claim.

With regard to the argument that Petitioner's earlier convictions should have been counted as a single incident or spree, this argument was presented by his counsel to the trial court, and Petitioner has offered no legal authority to support his position or that would entitle him to relief on this claim. See discussion, supra. Again, Petitioner fails to show counsel was deficient or that he was prejudiced.

With regard to whether § 17-25-45(A)'s application to him constituted an unconstitutional retroactive application,[23] the South Carolina Supreme Court has held that "[w]here conduct in committing offenses which trigger recidivist features of sentencing provisions occur after

---

[23]Petitioner complains that his previous convictions occurred prior to the passage of § 17-25-45(A)(2)(a).



the sentencing provision's effective date, there is no *ex post facto* violation." State v. Jones, 543 S.E.2d 541, 546 (S.C. 2001); see also State v. Dabney, 391 S.E.2d 563 (S.C. 1990)[amendment of statute lengthening time previous convictions could be used to increase punishment for subsequent DUI offense did not violate *ex post facto* clause as applied to drivers who committed offenses for which they were being sentenced after effective date of statute's amendment]. Here, it is uncontested that the offense which triggered the recidivist feature occurred after the provision's effective date. Accordingly, Petitioner has not shown that his counsel was deficient, or would have been successful if he had presented this argument to the state court in a subsequent motion, and has therefore failed to show prejudice.

Finally, Petitioner argues that his contention that Poole should have argued that the record didn't confirm that he was either represented on the previous charges or had waived counsel on those charges is supported by the United States Supreme Court's holding in Custis v. United States, 511 U.S. 485, 495-500 (1994), which provides that a defendant may challenge a previous conviction used for sentencing enhancement if he was not either represented by counsel in the previous case or waived that right. However, while Petitioner contends that the record does not affirmatively establish that fact, he has himself presented no evidence or credible argument that he was not either represented by counsel in those earlier convictions or waived his right. Accordingly, Petitioner has not shown that his counsel was ineffective for failing to make this argument in a post-trial argument and/or motion or that he was prejudiced by counsel's failure to do so.

Additionally, by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 14 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at



1159.

### (Claim 15 - defaulted)

In Ground Four (Claim 15), Petitioner contends that Poole was ineffective for stipulating to an element of first degree burglary without consulting him. The Fourth Circuit has stated,

> [t]here are essentially two categories of decisions made by a criminal defendant's trial counsel; those decisions, deemed "personal," that must be made with defendant's consent and those that may be made without the defendant's consent. Decisions that may be made without defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.

Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998)(internal quotations and citations omitted). Respondent contends that in light of this authority, Petitioner cannot show his counsel was ineffective when he entered into a stipulation to an element of first degree burglary without first consulting Petitioner.

However, even assuming that trial counsel should have consulted with Petitioner prior to agreeing to this stipulation (and further assuming he did not), Petitioner has failed to show how he was prejudiced by the stipulation. If counsel had not agreed to the stipulation, the State would have been able to enter Petitioner's prior burglary convictions into the record in front of the jury to establish this element of the charge. Petitioner has offered no evidence that his prior record would not have been admissible, and if the jury had been made aware of those prior convictions, there was a possibility that Petitioner could have been prejudiced on the first degree burglary count on which he was acquitted. Hence, Petitioner has made no showing that if the stipulation was not entered, the State could not have been able to prove he met the second required element of S.C. Code § 16-11-311



(A)(2) that he had two or more prior first degree burglary convictions. Therefore, Petitioner has shown no prejudice.

By failing to show any substantial ineffective assistance on this claim, Petitioner has also failed to show cause for his procedural default on this issue. Accordingly, claim 15 in Ground Four is procedurally barred from consideration by this Court. <u>Rodriguez</u>, 906 F.2d at 1159.

### (Claim 16 - defaulted)

In Ground Four (Claim 16), Petitioner contends that Poole was ineffective for failing to object to Detective Henson being qualified as an expert witness because he was hostile toward Petitioner and had a conflict of interest. Petitioner apparently makes these allegations based on the arson charges which have been previously discussed.

This claim was not presented at Petitioner's PCR evidentiary hearing and, therefore, there are no supporting factual findings by the PCR court on this matter. Other than Petitioner's completely unsubstantiated assertions, there is no evidence to support that Henson was hostile or had a conflict of interest. Furthermore, for purposes of an ineffective assistance of counsel claim, there is no evidence that Poole believed Henson had a conflict of interest in this case. Furthermore, as Respondent points out, even if Henson as a witness was hostile towards Petitioner or had a conflict of interest with Petitioner's case, Petitioner has not shown how that these allegations would have disqualified him as an expert. <u>See</u> Rule 601(a), SCRE ["Every person is competent to be a witness except as otherwise provided by statute or these rules."] Accordingly, if these allegations were true and could have been substantiated, they would have been more appropriately used for cross-examination of this witness. However, since the means to cross examine Henson on this issue would have involved referencing that Petitioner had pending arson charges for attempting to burn the



54

Cherokee County Courthouse, it is readily apparent as to why Poole may not have chosen to do so.

Petitioner has not shown that Poole was ineffective with regard to this allegation. Additionally, by failing to show any substantial ineffective assistance on this claim, Petitioner has failed to show cause for his procedural default on this issue. Accordingly, claim 16 in Ground Four is procedurally barred from consideration by this Court. Rodriguez, 906 F.2d at 1159.

### (Claim 17)

In Ground 4 (Claim 17), Petitioner asserts that he believes Poole had a conflict of interest. The PCR court found that the mere possibility of a conflict is insufficient to challenge a criminal conviction. Rather, it held that in order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. The PCR court also found that Petitioner must show that his attorney actually owed duties to a party whose interests were adverse to the Petitioner, and that although Poole practiced law in the Seventh Judicial Circuit, his office and work was centered in Spartanburg County, while the pending arson charges Petitioner faced originated in Cherokee County. The PCR court further found that it was clear from the record that Poole was a zealous advocate for the Petitioner, and that Petitioner had failed to meet his burden of proof as to this claim. (R.pp. 633-634). As previously discussed, substantial deference is to be given to the state court's findings; Evans, 220 F.3d at 311-312; Bell v. Jarvis, supra; 28 U.S.C. § 2254(e)(1); see also Fisher, 215 F.3d at 446-447; and the undersigned can find no reversible error by the state court under this standard.

Petitioner testified that after he was charged with the burglary first charge in this case, "it was alleged that I had something to do with setting the Cherokee County Courthouse on fire."



55

(R.p. 573). Although the transcript of the proceeding is not in the record, Petitioner testified that "I moved in front of Judge Couch to dismiss my attorney. And I was taken to Laurens, South Carolina, in front of Judge Couch, and he dismissed my attorney who was with Cherokee County Public Defender, because he's a county employee." (R.p. 574). Petitioner then testified that he didn't realize at the time Poole was appointed to represent him that Poole was a defense attorney out of Spartanburg, South Carolina, and that the 7th Circuit comes out of Spartanburg. (R.p. 574). Petitioner testified that since the 7th Circuit Solicitor's Office was recused from prosecuting his case and Poole had other clients who had to deal with the 7th Circuit Solicitor's Office, that Poole had a conflict and "basically just pretty much laid down on my case." (R.p. 574).

Poole testified at the state PCR hearing that he did not believe he had any conflicts in the case; (R.p. 610); and while Poole did represent other clients in the 7th Circuit, Petitioner has not shown that Poole was a county employee or that he would have had reason to favor the 7th Circuit Solicitor's Office just because he represented clients who themselves had adverse interests to that office.[24] The PCR court evaluated the credibility of both Poole and Petitioner, and found no conflict that would have required Poole's recusal or that adversely affected counsel's performance. (R.p. 633). The PCR court also found that Poole's testimony was more credible that Petitioner's testimony; that counsel was believable, knowledgeable, and well prepared; that counsel thoroughly investigated the case, researched legal issues, and prepared legal arguments in support of the defense theory; that counsel made the appropriate motions and argued against the introduction of the evidence from the traffic stop and attempted to attack the credibility and qualifications of State witnesses, but

---

[24]Poole was not in the same position as Thompson, who was relieved, because Thompson was apparently employed by Cherokee County. (R.p. 632).

unfortunately, the judge disagreed with counsel's efforts; and that counsel communicated with the Petitioner and attempted to negotiate with the State on Petitioner's behalf. (R.pp. 631-632). The undersigned can discern no reversible error in these findings. See Wade v. State, 419 S.E.2d 781, 782 (S.C. 1992)["Court must uphold the findings of the PCR judge if such findings are supported by any evidence"]; see also Mickens v. Taylor, 535 U.S. 162, 172 n. 5 (2002)["An 'actual conflict' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."]; Staggs v. State, 643 S.E.2d 690, (S.C. 2007)[conflict of interest if it affects adequacy of defendant's representation].

The PCR court's findings are entitled to substantial deference on habeas corpus review, and while a district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court; Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); the court may not substitute its own credibility determinations for those of the state court simply because it disagrees with the state court's findings (assuming that were to be the case). See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir.2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]. Here, the trial court record supports the PCR court's finding that Poole was a zealous advocate for the Petitioner. Further, given the deference due the state court's finding on this credibility issue, Petitioner has not shown that the state court's finding was unreasonable under § 2254(d), nor has Petitioner overcome the presumption accorded to the PCR court's findings. Evans, 220 F.3d at 312. See Seymour v. Walker, 224 F.3d 542, 553 (6th Cir.2000)["Given the credibility assessment required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was



57

unreasonable under § 2254(d)(2)."]; <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court ..."]; <u>Mickens</u> 535 U.S. at 172, n. 5 ["An 'actual conflict' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance"].

Therefore, this issue is without merit and should be dismissed.

### IV.

### (Ground Five)

In Ground Five of the Petition, Petitioner contends that he was never properly served with notice by the State with its intent to seek life without parole. Under South Carolina law, "[w]here the solicitor is required to seek or determines to seek sentencing of a defendant under this section, written notice must be given by the solicitor to the defendant and to defendant's counsel not less than ten days before trial." S.C. Code Ann. § 17-25-45 (H).

Petitioner raised this claim in his PCR petition, and at his PCR hearing, Petitioner disputed that he had ever been served with notice. (R.pp. 597-598). However, the PCR court found that Petitioner's testimony lacked credibility on this issue, in particular, because the record and Poole's testimony directly refuted Petitioner's testimony. (R.p. 630). <u>Cagle</u>, 520 F.3d at 324 ["for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear. . . . Indeed, 'federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."] (quoting <u>Marshall</u>, 459 U.S. at 434). Poole testified that Thompson had been served with the appropriate



notice and that he also believed that he was served.[25] (R.pp. 612-613). In addition, Poole testified that he discussed the life without parole issue with Petitioner, the reasons for the enhancement, and the reasons why the State was seeking life without parole. (R.p. 612). The record also reflects that prior to sentencing, the trial court confirmed that the State had served the notice of intent to seek life without parole pursuant to the Statute on Petitioner and his counsel. (R.pp. 308-309, 459-466). On inquiry by the court, counsel for the State stated,

> That has been done, Your Honor, and I have – I have copies of the affidavit of service, Your Honor. It was actually served back in – August 2nd of two thousand, four (2008), by the Seventh Circuit Solicitor's Office. Notice was also given back in November of two thousand, five (2005) by our office as well, Your Honor.

(R.p. 309).

The PCR court found that the state's notice of intent to seek life without parole was timely served, and that Petitioner had failed to meet his burden of proof with respect to this claim. (R.p. 630). No error is shown in this finding. The record before the state court reflects, and the state court found, that the Petitioner was served with proper notice, which satisfied the state law requirements of S.C. Code § 17-25-45(H). <u>Jeffcoat v. Warden of Broad River Correctional Institution</u>, No. 13-124, 2014 WL 131271 at * 4 (D.S.C. Jan. 13, 2014)["The South Carolina Supreme Court determined in <u>James v. State</u>, 641 S.E.2d 899 (S.C. 2007), that 'as long as the defendant and his counsel, at least ten days prior to trial, possess actual notice of the State's intention to seek a sentence under South Carolina's recidivist statute, the statute has been satisified.'"]. The PCR court also made credibility findings on this issue which Petitioner has not shown to be stark and clear error.

---

[25]At an earlier hearing where Thompson was representing Petitioner on additional state charges that Petitioner was facing in an unrelated matter (where Petitioner and Thompson were both present), the Solicitor specifically discussed that he had served a life notice on Petitioner. <u>See</u> Court Docket No. 21-15, p. 15.



Finally, this is matter of state law, and it is not the province of a federal habeas corpus court to reexamine state court determinations of state law questions. <u>Cagle</u>, 520 F.3d at 324; <u>Estelle</u>, 502 U.S. at 67-68 ["federal habeas corpus relief does not lie for errors of state law."]  Therefore, this issue is without merit and should be dismissed.

**V.**

**(Ground Six)**

In Ground Six of his Petition, Petitioner contends that he has two newly discovered or after discovered evidence claims.  First, Petitioner contends that Detective Fowlkes gave false testimony concerning Petitioner's second interview with the police.  Second, Petitioner contends that since the traffic offense which resulted in his initial detention was subsequently dismissed, the evidence obtained as a result of that stop was obtained in violation of the Fourth Amendment.

Petitioner raised these issues in his PCR action.  Under South Carolina law, to prevail on a PCR claim of newly discovered evidence, a Petitioner must establish that the newly discovered evidence:

> (1) is such that it would probably change the result if a new trial were granted; (2) has been discovered since the trial; (3) could not in the exercise of due diligence have been discovered prior to the trial; (4) is material; and (5) is not merely cumulative or impeaching.

<u>State v. Spann</u>, 513 S.E.2d 98, 99 (S.C. 1999)(citing <u>State v. Prince</u>, 447 S.E.2d 177 (S.C. 1993)). The PCR court found that Petitioner failed to meet his burden of proof, as he had failed to produce any evidence that met *any* of the requirements for after-discovered evidence. (R.p. 636). The grounds for habeas relief based on newly discovered evidence are "exceedingly narrow." <u>Wright v. South Carolina</u>, No. 91-7067, 1991 WL 117984 at * 1 (4th Cir. July 3, 1991).  To show a federal claim,



60

Petitioner must show an independent constitutional violation; <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993); and Petitioner has failed to make such a showing.

At his PCR hearing, Petitioner testified that although he was initially charged with having burglary tools, apparently as a result of his traffic stop, that this charge (the traffic offense) was later dropped. (R.p. 588). Richey represented to the PCR court that the traffic charge was subsequently dismissed or not pursued after Petitioner received the LWOP sentence. (R.pp. 559-560); <u>see</u> <u>also</u> Court Docket No. 21-9, pp. 132-133 [counsel's letter and order on Ticket no. 26822CR - disregarding stop sign]. Petitioner has not shown how the subsequent dismissal of a traffic ticket after his burglary conviction shows that he would be entitled to relief under state law, or that use of evidence obtained as a result of this traffic violated his constitutional rights.

With regard to Detective Fowlkes allegedly giving false testimony concerning Petitioner's second interview with the police, Fowlkes testified during the <u>Jackson v. Denno</u> hearing that Petitioner initiated the second interview, during which he told police that he could take them to Gallman's stolen property. (R.pp. 46-48). Petitioner contends that Fowlkes later admitted in a later civil pleading that he had given false testimony when he testified that Petitioner had initiated the second interview. However, the documents that Petitioner has provided in support of that assertion do not support his contention. <u>See</u> Court Docket No. 1-1, pp. 9-11, 15. Rather, in the Answer referred to by Petitioner, Fowlkes states that he met with Petitioner and interviewed him on November 13, 2013 about another burglary. <u>Id</u>. These pleadings do not contradict Fowlkes' testimony that Petitioner re-initiated contact with police regarding his knowledge about the burglary of the Gallman residence.

Accordingly, Petitioner has not shown that the PCR court's finding was unreasonable,



nor has he shown a violation of his constitutional rights. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding.] Therefore, Ground Six should be dismissed.

## VI.

### (Grounds Seven and Ten)

Petitioner contends that the trial court abused its discretion with regard to the admission of evidence from an expert witness regarding a shoe print in Ground Seven, and by allowing the admission of the parties' stipulation to the second element of his burglary first degree charge in Ground Ten.[26]

Petitioner raised the issue regarding the trial court's error for admitting the testimony of the footprint analysis expert in his direct appeal and in his PCR action. (R.pp. 629-630, 651). He also raised the issue of the trial court error regarding the admission of the parties' stipulation regarding his prior convictions in his PCR action. (R.pp. 629-630). However, although otherwise exhausted for purposes of federal review, these are issues of state law and, as previously discussed, "[i]t is not the province of a federal habeas corpus court to re-examine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68 ["federal habeas corpus relief does not lie for errors of state law."]. Federal courts must accord states deference in their determinations regarding evidence and procedure. Cf. Crane v. Kennedy, 476 U.S. 683, 690 (1986)["we have never questioned

---

[26]The background related to the stipulation that Petitioner had two or more prior convictions with regard to the requirements to meet one of the elements in of S.C. Code § 16-11-311(A)(2) has been previously discussed. See discussion (Grounds One and Nine), supra.

the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see this evidence admitted"]. Further, even where a state court's admission of evidence was error under state law, it is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

Admissibility rulings will support the grant of federal habeas relief only when the alleged error infringes on a specific constitutional right or is so prejudicial that it amounts to the denial of due process. Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir.), cert. denied, 488 U.S. 928 (1988). Hence, the issue before this federal court is not whether the trial court erred in admitting this evidence, but whether the admission resulted in a trial so fundamentally unfair as to deny the Petitioner due process of law. Rainer v. Dep't of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990), cert. denied, 489 U.S. 1099 (1991). The undersigned can find no such violation in the record of this case.

The PCR court found that Petitioner failed to meet his burden of proof as to both of these claims and that other than Petitioner's allegations in his application, Petitioner failed to provide any evidence or testimony to support these claims. The PCR court also found that the record clearly reflected and supported the trial court's communication with the parties, pre-trial hearing, and decision regarding both the stipulation to the aggravating element and the testimony of the expert regarding Petitioner's shoe prints. Furthermore, the PCR court found that both issues were raised and ruled upon by the trial court. (R.pp. 629-630). Again, no reversible error has been shown with



63

respect to these findings.

Additionally, with regard to the admission of the expert testimony regarding shoe print evidence, even assuming arguendo that the evidence was improperly admitted (which the Court does not find), Petitioner has shown no violation of a constitutional right with regard to this claim. Nor has Petitioner shown that he was so prejudiced that it amounted to a denial of his due process rights. Rainer, 914 F.2d at 1072. As previously discussed, the overwhelming evidence at trial concerning the Gallman burglary showed that Gallman identified Petitioner at trial as the man she witnessed acting strangely on her porch on the day before her home was burglarized. The State also submitted evidence that Gallman wrote down the tag number of the vehicle that the man she saw was driving that day, that the tag number matched the vehicle owned by Petitioner's girlfriend, that Petitioner drove the vehicle the day before the burglary (when Gallman witnessed him on her front porch) and the day of the burglary, that the guns stolen from Gallman's house were found in Petitioner's bedroom, and that he took police to another location where he claimed that he disposed of the other items stolen from the Gallman house. (R.pp. 109-129, 134-164, 172-178, 228-246). Based on the overwhelming evidence presented at trial, Petitioner has not shown that he was prejudiced by the admission of the testimony of the shoe print expert.

With respect to the trial court's admission of the stipulation by his counsel and the State of his prior convictions, this stipulation allowed Petitioner to avoid the jury hearing evidence of his prior four convictions of burglary first degree. In fact, the jury did not convict Petitioner of one of the burglary first degree charges that he was facing. Furthermore, if the trial court had not admitted the stipulation, Petitioner has presented no evidence to dispute his prior convictions or to show that his four prior burglary first degree convictions would not have been admitted into evidence. The PCR



court considered this issue and found that it was without merit;  (R.pp. 629-630); and the undersigned agrees that no error by the trial court has been shown, nor has Petitioner demonstrated a violation of this due process rights.

Accordingly, Petitioner has failed to present evidence or argument sufficient to show that the state court's rejection of these claims amounts to a federal violation or resulted in prejudice so as to warrant federal habeas relief.  Turner, 845 F.2d at 169 [Admissibility ruling only warrants federal habeas relief where it infringes on a constitutional right or is so prejudicial that it amounts to a denial of due process]; Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to clearly established federal law or based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra; 28 U. S. C. § 2254(e)(1)[Determination of factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].  Grounds Seven and Ten are without merit and should be dismissed.

## VII.

### (Grounds Eight and Eleven)

In Grounds Eight and Eleven of his Petition, Petitioner alleges the PCR court abused its discretion and that he received ineffective assistance of appellate PCR counsel.  However, these allegations do not concern Petitioner's underlying conviction, and such claims are therefore not a basis for federal habeas relief.  First, Petitioner has no claim for ineffective assistance of appellate PCR counsel; see, discussion, supra; as conduct of PCR counsel can only constitute "cause" for a



default of a claim under certain circumstances, but is not itself an independent claim.[27] <u>See also</u> 28 U.S.C. § 2254(i)["The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."]; <u>Martinez</u>, 132 S.C. at 1320[acknowledging that § 2254(I) precludes [a habeas petition] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief'"](quoting <u>Holland v. Florida</u>, 130 S.Ct. 2549, 2563 (2010)); <u>Auls v. Cohen</u>, No. 11-2930, 2013 WL 496239 at *3 (D.S.C. Feb. 6, 2013)[finding allegation "PCR counsel was ineffective . . . is not a proper basis for a § 2254 petition," citing 28 U.S.C. § 2254(I)].

      Respondent is also correct that alleged infirmities in PCR proceedings do not state a basis for federal habeas relief. <u>See</u> <u>Bryant v. Maryland</u>, 848 F.2d 492, 494 (4th Cir.1988) [claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas relief]; <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5th Cir.1995), <u>cert. denied</u>, 518 U.S. 1–22(1996)["An attack on a state habeas proceeding does not entitle the petitioner to habeas relief...."]; <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir.1987) (per curiam) ["Because claim (1) goes to issues unrelated to the

---

[27]Further, there is case law which supports the proposition that ineffective assistance of *appellate* PCR counsel, rather than lower court PCR counsel, does not even constitute "cause". <u>Cross v. Stevenson</u>, No. 11-2874, 2013 WL 1207067 at * 3 (D.S.C. Mar. 25, 2013)["*Martinez*, however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default. In fact, the Supreme Court expressly noted that its holding 'does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."](quoting <u>Martinez</u>, 132 S.Ct. at 1320); <u>Johnson v. Warden of Broad River Corr.</u>, No. 12-7270, 2013 WL 856731 at * 1 (4th Cir. Mar. 8, 2013)[PCR appellate counsel error cannot constitute cause under <u>Martinez</u> exception]; <u>Johnson v. Cartledge</u>, No. 12-1536, 2014WL 1159591 at *10 (D.S.C. Mar. 21, 2014)(same); <u>Lewis v. Williams</u>, No. 12-3214, 2013 WL 3929993 at *4 (C.D.Ill. July 29, 2013)[Ineffective assistance of PCR appellate counsel is not a ground for relief under § 2254]; <u>Flowers v. Norris</u>, No. 07-197, 2008 WL 5401675 at * 11 (E.D.Ark. Dec. 23, 2008)[same].



cause of [the] petitioner's detention, it does not state a basis for habeas relief."]; <u>Hassine v.</u> <u>Zimmerman</u>, 160 F.3d 941, 954 (3d Cir.1998) [errors in state post-conviction proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief].

Therefore, Petitioner has failed to state a basis for relief in his federal petition based on these alleged infirmities in his PCR proceeding. Accordingly, Grounds Eight and Eleven should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

July 31, 2014
Charleston, South Carolina



67

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

